1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| ROBERT HUNTER, | ) | 1:06-cv-00914-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| | ) | PLAINTIFF'S SOCIAL SECURITY |
| v. | ) | COMPLAINT (DOC. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | ORDER DIRECTING THE ENTRY OF |
| Security, | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | ROBERT HUNTER |
| | ) | |

17    Plaintiff is proceeding in forma pauperis and with counsel

18  against the Commissioner of Social Security. Pursuant to 42

19  U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review

20  of a final decision of the Commissioner denying an application

21  for Supplemental Security Income (SSI) benefits under Title XVI

22  of the Social Security Act (the Act). Pursuant to 28 U.S.C. §

23  636(c)(1), the parties have consented to the jurisdiction of the

24  Magistrate Judge to conduct all proceedings in this matter,

25  including ordering the entry of final judgment pursuant to 28

26  U.S.C. § 636(c).[1] The matter is currently before the Court on the

27

28      [1]On October 31, 2006, the Honorable Oliver W. Wanger ordered the case assigned to the undersigned
    Magistrate Judge for all purposes, including the entry of final judgment,

parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

I. Procedural Summary

Plaintiff filed an application for SSI benefits on October 21, 2003, alleging disability since March 1, 2001. (A.R. 295-98, 20.) Plaintiff's application was denied initially and on reconsideration. (A.R. 54-62, 63-68.) A hearing was held on December 1, 2005, before SSA Administrative Law Judge (ALJ) Michael J. Haubner, which Plaintiff attended with representation by an attorney, and at which Plaintiff testified. (A.R. 19.) The ALJ concluded that Plaintiff was not disabled by a decision dated February 17, 2006. (A.R. 19-26.)

Plaintiff had previously filed an application for SSI benefits on September 19, 2001, which was determined unfavorably to Plaintiff on August 25, 2003. (A.R. 85-88, 20.) The ALJ in the proceeding presently under review determined that under the doctrine of res judicata, he would not consider a disability onset date before August 25, 2003, the date of denial of the previous application. (A.R. 20.)

The Appeals Council denied Plaintiff's request for review on May 19, 2006. (A.R. 9-11.)

Plaintiff filed the instant action on July 14, 2007. Briefing commenced with the filing of Plaintiff's opening brief on February 23, 2007; Respondent filed a brief on March 19, 2007, and Plaintiff's reply brief was filed on March 29, 2007.

The ALJ found that Plaintiff had severe impairments of right hip effusion, status post-right hip arthroplasty, left hip

osteoarthritis, osteonecrosis of the bilateral hips, history of mild compression fractures of T10-12, osteoarthritis of the thoracic spine, mild cervical degenerative joint disease, and bulging cervical spine. (A.R. 20.) These impairments did not meet or medically equal a listing; further, Plaintiff had the residual functional capacity (RFC) to perform a wide range of sedentary work; although he could not perform his past relevant work, he could perform the world of unskilled sedentary jobs, of which a vocational expert testified there were 81,000 in California and 810,000 in the United States. (A.R. 24.) Accordingly, considering Plaintiff's capacity for sedentary work in combination with his age (forty-two years old at the time of the decision), education (high school GED), and work experience, pursuant to Rule 201.28 of Appendix 2, Subpart P, Regulations No. 4, Plaintiff was not disabled. (A.R. 24-25.)

II. <u>Scope and Standard of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the

evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. <u>See, Sanchez v. Secretary of Health and Human Services</u>, 812 F.2d 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

III. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of

4

not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A
claimant must demonstrate a physical or mental impairment of such
severity that the claimant is not only unable to do the
claimant's previous work, but cannot, considering age, education,
and work experience, engage in any other kind of substantial
gainful work which exists in the national economy. 42 U.S.C.
1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th
Cir. 1989). The burden of establishing a disability is initially
on the claimant, who must prove that the claimant is unable to
return to his or her former type of work; the burden then shifts
to the Commissioner to identify other jobs that the claimant is
capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last
fifteen years of work experience. Terry v. Sullivan, 903 F.2d
1273, 1275 (9th Cir. 1990).

        The regulations provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 2) whether solely on the basis of the medical
evidence the claimed impairment is severe, that is, of a
magnitude sufficient to limit significantly the individual's
physical or mental ability to do basic work activities; 3)
whether solely on the basis of medical evidence the impairment
equals or exceeds in severity certain impairments described in
Appendix I of the regulations; 4) whether the applicant has
sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the

1  applicant's past work; and 5) whether on the basis of the

2  applicant's age, education, work experience, and residual

3  functional capacity, the applicant can perform any other gainful

4  and substantial work within the economy. See 20 C.F.R. § 416.920.[2]

5      IV. Credibility

6      Plaintiff argues that the ALJ's credibility determination

7  was in error because the medical evidence supported Plaintiff's

8  allegation of disabling pain and because the ALJ failed to

9  consider Plaintiff's persistent efforts to obtain relief from his

10 pain.

11     It is true, as Plaintiff argues, that persistent efforts to

12 obtain relief from pain tend to enhance credibility. Soc. Sec.

13 Ruling 96-7p. However, these efforts are only one factor to be

14 considered in the established course of analysis of a claimant's

15 subjective complaints.

16     The existence and severity of a person's reaction to a

17 physical ailment, such as the existence and severity of pain, are

18 subjective phenomena, the extent of which cannot be objectively

19 measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In

20 order to reject a claimant's subjective complaints, the ALJ must

21 provide specific, cogent reasons for the disbelief. Lester v.

22 Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant

23 introduces medical evidence of an underlying impairment that

24 could reasonably be expected to produce some degree of the

25 subjective symptoms, the Commissioner may not discredit the

26 claimant's testimony as to subjective symptoms merely because

27

28

---

[2] All citations to the Code of Federal Regulations are to the 2006 version unless otherwise stated.

they are unsupported by objective evidence such as objective
medical findings. Id.; Smolen v. Chater, 80 F.3d 1273, 1282 (9th
Cir. 1996). Unless there is affirmative evidence tending to show
that the claimant is malingering, the reasons for rejecting the
claimant's testimony must be clear and convincing, and the ALJ
must set forth the rejection by identifying what testimony is not
credible and what evidence undermines the claimant's complaints.
Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator
must be properly supported by the record and must be sufficiently
specific to allow a reviewing court to conclude that the
adjudicator rejected the claimant's testimony on permissible
grounds and did not arbitrarily discredit a claimant's testimony.
Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60
F.3d at 641-42 (9th Cir. 1995); see 20 C.F.R. § 404.1529(c)
[disability] and 20 C.F.R. § 416.929(c) [supplemental security
income].

Social Security Ruling 96-7p directs the adjudicator to
consider not only objective medical evidence of signs, laboratory
findings, and medical opinions, but also the following factors
when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity
   of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and adverse
   side effects of any medication for pain or other
   symptoms;
5. Treatment, other than medication, for relief of
   pain or other symptoms;
6. Any measures other than treatment used by the
   individual to relieve the pain or other symptoms; and
7. Any other factors concerning the individual's
   functional limitations and restrictions due to
   pain or other symptoms.

1  See also Bunnell v. Sullivan, 947 F.2d at 346.

2      Here, the ALJ considered Plaintiff's testimony that he did
3  not drive, last shopped a year before and never went clothes
4  shopping, did not go to church, visit, make the bed, sweep, do
5  yard work, dust, mop, feed the dog, or help the children with
6  homework; he watched television for three hours in the afternoon
7  and lay down for four hours in the afternoon after lunch; he used
8  a cane prescribed several years ago; he could sit and stand for
9  thirty to forty-five minutes, walk eighty feet, and concentrate
10  for thirty minutes at a time; he had back and hip problems,
11  arthritis, a spur in the neck and lower back, pain from head to
12  feet and headaches twenty-four hours a day that were both an
13  eight on a scale of one to ten; and he had pain from his neck
14  down into his hands since March 2001. He had not been to the
15  emergency room for the past two years. (A.R. 23, 441-52.)

16      The Court rejects Plaintiff's argument that the ALJ erred in
17  his determination that Plaintiff's subjective complaints were not
18  supported by the medical evidence and were not entirely credible
19  when evaluated under Social Security Ruling 96-7p. (A.R. 23.) The
20  ALJ expressly stated numerous reasons that were clear and
21  convincing in force and supported by substantial evidence in the
22  record.

23      It is established that included in the factors that an ALJ
24  may consider in weighing a claimant's credibility are the
25  claimant's reputation for truthfulness; inconsistencies either in
26  the claimant's testimony or between the claimant's testimony and
27  the claimant's conduct, daily activities, or work record; and
28  testimony from physicians and third parties concerning the

1  nature, severity, and effect of the symptoms of which the
2  claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9ᵗʰ
3  Cir. 2002). The ALJ may consider whether the Plaintiff's
4  testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087,
5  1090 (9ᵗʰ Cir. 1999).

6     The ALJ here relied on several inconsistencies between
7  Plaintiff's representations and the record. He noted that
8  although Plaintiff told Dr. Jergesen that he had a cervical
9  fracture, the evidence from the prior hearing indicated that
10 Plaintiff had no acute fracture and no significant impingement.
11 (A.R. 23.) The record shows that Plaintiff reported a cervical
12 fracture to Dr. Jergesen in August 2005 that allegedly caused him
13 to be disabled in 2003. (A.R. 393.) However, a cervical spine
14 study without contrast taken on July 10, 2001, showed that no
15 acute fracture of the cervical spine; further, an MRI scan dated
16 July 27, 2001, revealed that although there was mild disc
17 protrusion at C3-4, C4-5, and C5-6, there was no significant
18 impingement on the cervical cord, and no significant narrowing of
19 the canal. (A.R. 137, 133.)

20    The ALJ stated that although Plaintiff told Dr. Jergesen on
21 July 12, 2005, that he was not taking any medication, in May 2005
22 and July 2005, Dr. Shabhakar refilled the Plaintiff's Soma,
23 Ultram, Elavil, Patanol, Loratadine, and Promethazine. (AR. 23.)
24 The record supports this finding. (A.R. 423 [letter from Dr.
25 Jergesen], 360, 362.)

26    The ALJ recited Plaintiff's statement to Dr. Jergesen that
27 Plaintiff had hip pain for two years before seeking treatment
28 (A.R.  23, 383, 393 [report of Dr. Jergesen dated August 24,

2005]); the ALJ then noted that Plaintiff never mentioned any hip pain to consultative orthopedic examiner Dr. Young in January 2004 (A.R. 23, 326-28).

The ALJ also noted Plaintiff's failure to report significant symptoms to his treating physician. The ALJ noted Plaintiff's Social Security report that he had bladder and bowel problems (A.R. 24, 120), and yet the month before he denied any such problems in reporting to his treating physician (A.R. 144 [letter from Dr. Ehteshami to Dr. Wadhwani]). Plaintiff alleged daily headaches since March 2001 with pain an eight on a scale of one to ten; however, he denied having headaches to his treating physician in July 2001. (A.R. 24, 450, 132 [Sierra View District Hospital nursing history notes showing no headaches often, with Dr. Siddhu as treating physician].) Plaintiff claimed in testimony to have had right upper extremity symptoms and problems for one year in 2001, yet he denied these to his treating physician in September 2001. (A.R. 24, 450-51, 144 [letter from Dr. Ehteshami noting that Plaintiff denied any right upper limb symptoms].)

These conflicts with respect to Plaintiff's subjective claims were supported by substantial evidence in the record and constituted clear and convincing reasons.

The ALJ further noted that Dr. Jergesen wrote that Plaintiff's severe hip pain exceeded what one might expect from the x-rays. (A.R. 23, 424.)

The ALJ also relied on Plaintiff's "dismal" work history, which showed no years of full, substantial gainful activity in the past relevant fifteen years, and only three years of full

1   substantial gainful activity in his entire life. (A.R. 23.)
2   Substantial evidence supported this reason. (A.R. 438-40, 95.) A
3   claimant's extremely poor work history shows that he has little
4   propensity to work and negatively affects her credibility
5   regarding her inability to work. Thomas v. Barnhart, 278 F.3d
6   947, 959 (9th Cir. 2002).

7       The ALJ also mentioned Dr. Young's notation that Plaintiff
8   had positive right and left straight leg raising in the supine
9   position at forty-five degrees, yet in the seated position had
10  completely normal leg raising. (A.R. 23-24, 327.) The ALJ
11  reasoned that such a significant variance of the bilateral lower
12  extremities is indicative of functional overlay, such as
13  exaggeration or malingering.

14      The ALJ also stated that although Plaintiff testified that
15  he could only concentrate for thirty minutes, the ALJ observed
16  that Plaintiff paid attention and responded appropriately
17  throughout the hearing of fifty minutes. (A.R. 24.) Observations
18  by the ALJ of a person's functioning may not form the sole basis
19  for discrediting a person's testimony; rather, they may be used
20  only in the overall evaluation of the credibility of the
21  individual's statements. Orn v. Astrue, 495 F.3d 625, 639-40 (9th
22  Cir. 2007) (citing S.S.R. 96-7p at 7). The Court is satisfied
23  that the ALJ's consideration of Plaintiff's ability to
24  concentrate and respond during the lengthy hearing was only one
25  of many reasons and was mentioned in the overall evaluation of
26  the credibility of Plaintiff's statements.

27      The ALJ expressly concluded with respect to Plaintiff's
28  credibility that because of the lack of medical evidence and

11

because of the inconsistencies in the record and testimony, he was constrained to give little weight to Plaintiff's allegations. (A.R. 24.)

With respect to the medical evidence, the findings of the ALJ concerning the inconsistency of Plaintiff's complaints with the medical record have previously been set forth. The ALJ further detailed the medical history presented in the medical records. (A.R. 21-23.) The treatment of the treating physicians' opinions will be further discussed hereinbelow.

Plaintiff points to evidence that Plaintiff continued to seek medical treatment for his pain, and Plaintiff argues that the ALJ's finding concerning credibility was erroneous because the ALJ failed to consider Plaintiff's efforts to seek medical treatment and to follow the treatment prescribed.

Pursuant to Soc. Sec. Ruling 96-7p, a longitudinal record of persistent efforts to obtain pain relief in general lends support to an individual's allegations of intense and persistent pain or other symptoms; further, persistent attempts, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual. Soc. Sec. Ruling 96-7p at 6-7.

Here, there were indications that Plaintiff continued to seek treatment. However, Plaintiff has not demonstrated that the record necessarily must be interpreted only to indicate a persistent attempt to seek treatment; rather, there is an absence of trials of a variety of treatment modalities or changes in

treatment sources that would compel an inference in Plaintiff's favor. The record shows a continued reliance on medications despite allegedly constant, severe pain throughout major portions of Plaintiff's body. It is for the ALJ in the first instance to evaluate all the evidence concerning Plaintiff's credibility. To the extent that medical evidence is inconsistent or conflicting, it is the responsibility of the ALJ to resolve any conflicts. Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). An ALJ is entitled to draw inferences logically flowing from the evidence. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

Here, although there was evidence that could have been interpreted in Plaintiff's favor, there was also substantial evidence supporting the reasons relied on by the ALJ, who carefully considered all the evidence, including the medical evidence. Where the evidence supporting an ALJ's rejection of a claimant's credibility is substantial, and where it demonstrates that the ALJ did not arbitrarily reject the Plaintiff's testimony, the finding will be upheld even though the finding is not as extensive as possible and does not consider all possible factors. Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (where the AlJ's conclusion was based on the claimant's daily activities, treating therapist's notes, and good response to treatment); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (upholding an ALJ's rejection of a claimant's credibility based on medical evidence, daily activities, and Plaintiff's testimony that a medication aided intermittent pain).

1    Here, the ALJ reviewed the evidence and sufficiently
2 articulated clear and convincing reasons, supported by
3 substantial evidence, in rejecting Plaintiff's specific
4 subjective complaints.

5    V. <u>Rejection of the Treating Physician's Opinion</u>

6    Plaintiff argues that the ALJ erred in rejecting the opinion
7 of Plaintiff's treating physician, Dr. Shubhakar, that he was
8 disabled from work. The opinion was pertinent to Plaintiff's RFC,
9 which the ALJ determined was to perform a wide range of sedentary
10 work because Plaintiff was able to lift and carry no more than
11 fifteen pounds at one time, stand and walk for no more than two
12 hours and sit for no more than six hours in an eight-hour
13 workday, bend and stoop occasionally but not use his bilateral
14 upper extremities for work at or above shoulder level. (A.R. 21.)

15    The ALJ summarized the pertinent medical record which
16 pertained to the numerous impairments (hip problems,
17 osteoarthritis of the thoracic spine and mild compression
18 fractures of T10-12, and cervical degenerative joint disease and
19 bulging cervical spine) claimed by Plaintiff.

20    The ALJ noted treatment in May and June 2003 by medication
21 for Plaintiff's low back pain by Dr. Wadhwani, who diagnosed low
22 back pain and disc protrusion and opined that Plaintiff should
23 not engage in heavy lifting and standing for long periods;
24 although there was a reference in June 2003 to disability, the
25 context was found to be unclear because of illegibility. (A.R.
26 21, 351, 350.) The ALJ found the limitations to be consistent
27 with a RFC for sedentary work and thus supportive of the ALJ's
28 decision. (A.R. 21.)

1    The ALJ noted the opinion of Plaintiff's treating physician
2  in June 2003 that because of disc protrusion at C3-C6, Plaintiff
3  could not work as a construction worker and could not bend down.
4  (A.R. 23, 234.) The ALJ stated that the opinion was consistent
5  with a sedentary residual functional capacity because it
6  precluded construction work and bending. (A.R. 23.)

7    The ALJ detailed the treatment by Plaintiff's new treating
8  physician, Dr. Shubhakar, in November and April 2003 with Keflex,
9  Soma, Ultram, Elavil, and Vicodin for chronic back pain,
10 herniated cervical disc, and a compression fracture in the T10,
11 T11, or T12 area; Plaintiff reported in July 2004 that the
12 medications helped relieve his low back pain. (A.R. 21, 345, 342,
13 377.) The ALJ disregarded Dr. Shubhakar's report for Tulare
14 County Health and Human Services Agency of September 2004, in
15 which the doctor stated that Plaintiff was permanently disabled,
16 prevented from caring for children, and was required to have
17 someone care for him. (A.R. 21, 359.) The ALJ's reasons for
18 disregarding the report were that the ultimate determination of
19 disability was an issue reserved to the Commissioner under Soc.
20 Sec. Ruling 96-5p, and that the form had no explanation of the
21 nature of the purported disability and proposed no functional
22 limitations. (A.R. 21.) The ALJ noted that the form was a fill-
23 in-the-blanks, check-block form indicating only the Plaintiff was
24 permanently disabled. (A.R. 22.) The ALJ stated that the form
25 lacked bases for the conclusion such as signs or test results,
26 and it was not clear whether the opinion was based on the
27 claimant's subjective complaints, or on objective findings or
28 observation. (Id.)

1    The Court notes that the report concerned whether or not
2 Plaintiff could participate in Welfare-to-Work activities. In the
3 blank provided for the dates of any current inability to work or
4 participate in a training or education program, the doctor wrote,
5 "PERMANENT DISABILITY," and he checked "Yes" next to queries
6 concerning whether the patient's condition prevented him from
7 providing care for children in the home and required someone to
8 be in the home with Plaintiff. (A.R. 359.)

9    The Court further notes that a determination of whether or
10 not a claimant meets the statutory definition of disability is a
11 legal conclusion reserved to the Commissioner; the opinion of a
12 medical source on the ultimate issue of disability is not
13 conclusive. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.
14 1989). Additionally, it is established that it is appropriate for
15 an ALJ to prefer an opinion supported by specific clinical
16 findings and an explanation thereof over a check-off type of form
17 lacking an explanation of the basis for the conclusions. Crane v.
18 Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (citing Murray v.
19 Heckler, 722 F.2d 499, 501 (9th Cir. 1983)); see Batson v.
20 Commissioner of the Social Security Administration, 359 F.3d
21 1190, 1195 (9th Cir. 2004).

22    The ALJ noted the opinion of consultive orthopedic examiner
23 Dr. Frederick R. Young, who in examining Plaintiff in February
24 2004 found no spinous process tenderness or spasm in the neck or
25 back; range of motion was not tested because of Plaintiff's
26 statement of pain with the effort. Straight leg raising was to
27 forty-five degrees left and right, and to ninety degrees left and
28 right while seated. Sensory perception was normal to pinprick in

16

both lower extremities, deep tendon reflexes were normal, gait was normal despite use of a cane, which was not used in cadence sequence repetitively but rather seemed to switch back and forth; the ALJ noted that although Dr. Young opined that Plaintiff had a history of a back injury, there was little medical evidence to support a significant back injury. (A.R. 22, 326-28.)

The ALJ stated that he gave some weight to the opinion of Dr. Young that Plaintiff did not have a significant back injury and noted that the evidence showed an old, mild compression fracture of T10-12 and mild cervical bulging and disc disease. (A.R. 23.) The ALJ stated that the primary source of pain seemed to be the hips, but Plaintiff did not reveal that information to Dr. Young. (Id.)

The ALJ mentioned the state agency analyst and medical reviewer who in March 2004 opined that Plaintiff could perform sedentary work with occasional stooping, frequent climbing, balancing, kneeling, crouching, and crawling, and no use of either upper extremity to work above shoulder level. (A.R. 22, 329-37.) The ALJ noted that these opinions relied on Chavez v. Bowen to uphold the prior decision of the ALJ. (A.R. 22, 334.) However, the ALJ had previously noted that Chavez did not create a continuing presumption of disability in the present case because Plaintiff had presented evidence of a new impairment, namely, hip pain. (A.R. 20.) The ALJ also stated that he gave some weight to the opinion because it was consistent with a sedentary residual functional capacity. (A.R. 23.)

After detailing this medical evidence, the ALJ then addressed the opinion of Plaintiff's treating physician, Dr.

17

Shubhakar, of September 2004 that Plaintiff was disabled. (A.R. 22, 359).

The ALJ also detailed the history of Plaintiff's problem with his hips; he noted Dr. Shubhakar's notation in January 2005 that Plaintiff had paraspinal spasm from T6 to T12, limited back range of motion, positive straight leg raising, and inability to sit down for a long time. (A.R. 21, 368.) An x-ray of Plaintiff's right hip in April 2005 showed moderate osteoarthritis with possible avascular necrosis, although Plaintiff's medications helped; an MRI in May 2005 showed significant bilateral hip avascular necrosis. (A.R. 363-65.) Referral to orthopedic surgeon H. Jergesen, M.D., at UCSF Medical Center, resulted in Dr. Jergesen's report of hip pain that was severe, daily, and was exacerbated by standing, walking, and movement of the legs, and his opinion that Plaintiff had osteonecrosis of the right hip at stage IV on the right and stage II on the left. (A.R. 423-24.) Right hip total arthroplasty in August 2005 left Plaintiff making excellent progress with physical therapy and weight bearing. (A.R. 22, 383, 398-99.)

After summarizing the medical record, the ALJ stated that because of the importance of the outstanding issues concerning the treating physician's opinion, during the hearing the ALJ asked Plaintiff's counsel to obtain clarification from the doctor who wrote the form and stated he would hold the record open for two weeks for that submission. (A.R. 22, 447.) The ALJ asked for the basis for any limitations, specific limitations such as an RFC, the onset and duration, number of visits at which the doctor saw the patient, if part of a treatment team, the number of

consults with the other team members, date the patient was last seen, any subjective limitations, and the doctor's qualifications. (A.R. 447.)

In his decision, the ALJ stated that the letter that he received from Dr. Shubhakar (A.R. 425) only said that Plaintiff was under care for chronic low back and hip pain; Plaintiff had a total hip replacement of the right side and was awaiting an operation for the left side; he was unable to stand for a prolonged time or bend or stoop; and he should not lift more than five pounds. (A.R. 22-23.) The doctor diagnosed osteoarthritis of the hip secondary to avascularnecrosis, degenerative disc disease and disc prolapse (neck area). (A.R. 425.) The ALJ stated that because the doctor had failed to respond to most of his questions, he was not able to give the opinion controlling weight, but he could give it some weight because it was consistent with his decision that Plaintiff was able to perform sedentary work. (A.R. 23.)

Plaintiff argues that the opinions of the other doctors do not amount to evidence substantial enough to support the finding that Plaintiff was not disabled because the other doctors had not considered Plaintiff's hip surgery in 2005. Plaintiff asserts that the ALJ erred in rejecting the treating doctor's opinion simply because the doctor failed to respond to all the ALJ's questions; instead, the opinion should be given great weight because it is the only one that considered the totality of the medical record, including Plaintiff's right total hip arthroplasty done in August 2005.

The law pertinent to evaluating the opinions of treating

physicians was recently summarized:

> The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. <u>Lester [v. Chater</u>, 81 F.3d 821, 830 (9th Cir.1995) (as amended).] Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. <u>Id.</u> (internal quotation marks omitted). Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. <u>Id.</u> at 830, quoting <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th Cir.1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. <u>Magallanes [v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.1989).] The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir.1988).
> 
>     <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir.1998); accord <u>Thomas</u>, 278 F.3d at 957; <u>Lester</u>, 81 F.3d at 830-31.

<u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).

Further, the criteria for evaluating expert decisions was likewise addressed in <u>Orn v. Astrue</u>:

> By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. See 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." <u>Id.</u> § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. <u>Id.</u> § 404.1527(d)(2)(i)-(ii). Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating

1
2
3
4
5
6
7
8

> physicians are afforded less weight than those of
> treating physicians. Id. § 404.1527(d)(1)-(2).
> Additional factors relevant to evaluating any medical
> opinion, not limited to the opinion of the treating
> physician, include the amount of relevant evidence that
> supports the opinion and the quality of the explanation
> provided; the consistency of the medical opinion with
> the record as a whole; the specialty of the physician
> providing the opinion; and "[o]ther factors" such as
> the degree of understanding a physician has of the
> Administration's "disability programs and their
> evidentiary requirements" and the degree of his or her
> familiarity with other information in the case record.
> Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

9
10

      With respect to proceedings under Title XVI, the Court notes

11

that an identical regulation has been promulgated. See, 20 C.F.R.

12

§ 416.927.

13

      Here, the ALJ acknowledged that he needed to know the basis

14

of the doctor's opinion as well as to ascertain the substance of

15

the opinion itself with respect to specific limitations, onset

16

date of restrictions and the reasons for choosing that date, the

17

duration of the condition, whether or not it had or was expected

18

to endure less than twelve continuous months, and at what

19

severity level. Further, the ALJ desired information useful to

20

evaluating the treatment relationship. To the extent that the ALJ

21

needed to develop the record in order to know the basis of the

22

doctor's opinion or otherwise to evaluate it, he performed his

23

duty in articulating the precise information needed and leaving

24

the record open for a reasonable time period for supplementation.

25

Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); Smolen v.

26

Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (noting regulations

27

providing that an appropriate inquiry could include subpoenaing

28

the physicians, submitting further questions to them, or

1  continuing the hearing to augment the record).

2      The ALJ here sought the necessary information in order to
3  evaluate the treating physician's opinion. Although the medical
4  record independently could have provided some evidence of
5  longevity of treatment, the evidence requested by the ALJ was
6  specific and pertinent. Yet the doctor did not provide any basis
7  for the opinion other than a very general diagnosis and a summary
8  of Plaintiff's past and expected treatment for his hip pain. He
9  referred to limitations on standing, bending, stooping, and
10 lifting. However, he did not respond otherwise to the request for
11 a statement of the basis for the opinion; the ALJ still did not
12 know whether it was based on any particular tests, on Plaintiff's
13 subjective claims, a combination thereof, or even other,
14 unspecified data. The only data arguably relevant to severity
15 were the limitations and treatment. Further, the doctor did not
16 give any information with respect to onset, duration, or expected
17 duration in the future. Finally, the doctor did not provide any
18 information concerning the frequency of the patient-doctor
19 contact, the extent of the doctor's participation in any team
20 treatment, or other factors pertinent to evaluating the treatment
21 relationship underlying the opinion.

22     As the foregoing legal standards indicate, the absence of an
23 explanation or a sound basis for an opinion is appropriately
24 considered. Likewise, the nature of the treatment relationship is
25 an important factor. The opinions of the other physicians
26 contradicted the treating doctor's opinion with respect to
27 Plaintiff's spinal impairments and his RFC, and thus, the
28 specific and legitimate reasons stated by the ALJ were sufficient

1   to cite in rejecting the treating physician's opinion on these

2   matters. With respect to the hip problem, Plaintiff was given an

3   opportunity to provide the ALJ with information needed to

4   evaluate the treating doctor's opinion; when he did not, the ALJ

5   did not determine that the record was inadequate, but rather

6   proceeded to evaluate the information in the record. Based on the

7   limited information before him, the ALJ followed correct legal

8   standards and stated specific and legitimate reasons for his

9   decision.

10      Although the ALJ was not presented with the information that

11  he desired, it was Plaintiff's burden to prove that he was

12  disabled, i.e., that he was precluded from engaging in not only

13  his previous work, but also from performing any other kind of

14  substantial gainful work due to the impairment. Matthews v.

15  Shalala, 10 F.3d 678, 680 (citing 42 U.S.C. § 423(d)(1)(A)).

16  Further, Plaintiff must establish that an impairment has lasted

17  or is expected to last at least twelve continuous months, and the

18  inability to work caused by the impairment must last at least

19  twelve continuous months. 20 C.F.R. §§ 404.1509, 416.909;

20  Barnhart v. Walton, 535 U.S. 212, 214-22 (2002). Plaintiff did

21  not meet his burden in this regard.

22      VI. Disposition

23      Based on the foregoing, the Court concludes that the ALJ's

24  decision was supported by substantial evidence in the record as a

25  whole and was based on proper legal standards.

26      Accordingly, the Court AFFIRMS the administrative decision

27  of the Defendant Commissioner of Social Security and DENIES

28  Plaintiff's Social Security complaint.

1    The Clerk of the Court IS DIRECTED to enter judgment for

2  Defendant Michael J. Astrue, Commissioner of Social Security,

3  and against Plaintiff Robert Hunter.

4  IT IS SO ORDERED.

5  Dated:   **January 23, 2008**              **/s/ Sandra M. Snyder**
                                         UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28